**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTHONY BANAS,                                     )
on behalf of Plaintiff and the class members       )
described herein,                                   )
                                                    )
                         Plaintiffs,                )          1:2024-cv-01767
                                                    )          Judge Bucklo
            vs.                                      )
                                                    )
MIDWEST FIDELITY SERVICES, LLC,                     )
                                                    )
                         Defendant.                 )

## AMENDED COMPLAINT  – CLASS ACTION

### INTRODUCTION

1.       Plaintiff Anthony Banas brings this action to secure redress from unlawful collection

practices engaged in by Defendant Midwest Fidelity Services, LLC.  Plaintiff alleges that Defendant

attempted to collect usurious and illegal high-interest consumer loans, void under Illinois law, from

Plaintiff and others.   Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C.

§1692 *et seq.* ("FDCPA"), and seeks a  declaration that the loans sought to be collected by Defendant

are invalid.

### JURISDICTION AND VENUE

2.       The Court has subject matter jurisdiction under 28 U.S.C. §1331, 15 U.S.C. §1692k

28 U.S.C. §1337, and 28 U.S.C. §1367. Jurisdiction may also exist under 28 U.S.C. §1332(d).

3.       This Court has personal jurisdiction over Defendants because they knowingly

participated in the collection of unlawful loans to Illinois residents. In similar actions, courts have

held that personal jurisdiction over the persons involved in making and collecting the loans exists in

the state where the borrower obtained a loan via the Internet, and in which loan funds were

disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL

2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d

Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to

subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

4.      Venue is proper because acts to obtain and collect the loans impacted Plaintiff in this District.

5.      Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

6.      Plaintiff is a resident of Cook County, Illinois.

7.      Defendant Midwest Fidelity Services, LLC is a limited liability company organized under Kansas law with its principal office at 103 S. Main St., Ottawa, KS 66067-8503. It does business in Illinois.  Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

8.      Defendant Midwest Fidelity Services, LLC uses the mails and interstate wire communications to collect consumer debts allegedly owed to others.

9.      Defendant Midwest Fidelity Services, LLC is a debt collector as defined by the FDCPA.

## FACTS

10.     Defendant Midwest Fidelity Services, LLC has been attempting to collect from Plaintiff a high-interest Internet loan originated  by "Rapital Capital," supposedly located in Canada.

11.     The loan was made via the Internet to Plaintiff while Plaintiff was located in Illinois, where he resided.

12.     The loan was obtained for personal, family or household purposes and not for business purposes.

13.     On or about February 22, 2023, Defendant Midwest Fidelity Services, LLC sent Plaintiff the email correspondence attached as Appendix A, seeking to collect the "Rapital Capital" debt.

14.     "Rapital Capital" makes loans at annual percentage rates of over 400%.

15.     "Rapital Capital" claims to be owned by an Indian tribe in Canada.

16.     This is not in fact true. Most of the profit from the loans is received by non-Native Americans.

17.     Appendix A represents that there is an outstanding "balance," and seeks to invite resolution by payment plan or settlement.

18.     Such a communication represents or implies that the debt is valid and legally enforceable. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

19.     At all relevant times, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest.  205 ILCS 670/1.

20.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void

and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

21. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

22. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

23. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

24. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ ccd/Discipline/HammockCreditCDOrder12CC581.pdf);

-4-

*In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/
CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De
sist%20Order%20Bob%208%2016%202017.pdf).

25.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it
unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates
in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and
void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any
principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

28.     "Rapital Capital" has never had a license  from the Illinois Department of
Financial and Professional Regulation or a state or federal banking or credit union charter, entitling
it to make loans to Illinois residents at more than 9% interest.

29.     "Rapital Capital"  nevertheless advertises and makes loans to Illinois residents at
rates greatly exceeding 9%.

30.     Defendant Midwest Fidelity Services, LLC engages in a practice of attempting to
collect high-interest loans (greatly in excess of 9%) obtained by Illinois residents in Illinois over the
Internet from unlicensed lenders, including but not limited to "Rapital Capital."

31.     The lenders sought out Illinois residents for such loans.

32.     The lenders were never licensed to make loans by the Illinois Department of
Financial and Professional Regulation.

33.     The lenders did not have a bank or credit union charter that would authorize them
to lend to Illinois residents at over 9%.

34.     All loans made by the lenders were made at an annual percentage rate exceeding
the 9% which a non-bank lender which does not have a license from the Illinois Department of
Financial and Professional Regulation may charge for a loan made to an Illinois resident.

35.     By demanding payment and offering a settlement, Defendant Midwest Fidelity
Services represented or implied that the debt it sought to collect was legally enforceable.

36. The loan Defendant was attempting to collect was unenforceable.

## COUNT I – FDCPA

37. Plaintiff incorporates paragraphs 1-36.

38. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

39. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

40. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collector" harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

41. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

42. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. § 1692 *et seq.*

43. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by engaging in the conduct set forth above.

44. Section 1692e provides:

**False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.**

-6-

> Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
>> **(2)** The false representation of–
>>
>>> **(A)** the character, amount, or legal status of any debt; . . .
>>
>> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>>
>> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

45.     By representing that usurious loans had outstanding balances, and offering settlements of such purported obligations, Defendant engaged in materially deceptive and misleading collection communications. Defendant also failed to disclose material facts necessary to make the statements made not misleading, all in violation of § 1692e.

46.     Section 1692f provides:

> **§ 1692f.     Unfair practices [Section 808 of P.L.]**
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

47.     Under § 1692f(1), "A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, Statements of General Policy or Interpretation, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988).

48. The collection or attempted collection of usurious loans violates §1692f(1). *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3ʳᵈ Cir. 2000) ("[D]efendants presumably have violated section 1692f(1) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Patzka v. Viterbo College*, 917 F.Supp. 654, 658 (W.D. Wisc. 1996); *Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1509 (D.N.M. 1994) (granting partial summary judgment to plaintiff, holding that debt-collector defendant falsely represented plaintiff's debt in violation of the FDCPA, by demanding compound interest that the creditor was not allowed to collect under state law).

## CLASS ALLEGATIONS

49. Plaintiff brings this claim on behalf of a class and a subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

50. The class consists of (a) all individuals with Illinois addresses (b) from whom Midwest Fidelity Services sought to collect a loan (c) made at more than 9% interest (d) to an Illinois resident while in Illinois (e) by an entity which did not possess a bank or credit union charter and was not licensed by the Illinois Department of Financial and Professional Regulation (f) by communicating with the consumer and/or credit reporting (g) where the loan has not been paid in full.

51. The subclass consists of class members where the unlicensed entity was "Rapital Capital".

52. Similar classes have been certified in a number of prior cases. *Jones v. National Credit Adjusters,* 10cv8027 (N.D.Ill.) (Gilbert, M.J.) (class settlement); *Couser v. National Credit Adjusters*, 1:12-cv-07593-JSR and 1:13-cv-02542-JSR (S.D.N.Y.) (class settlement); *Paxton v. National Credit Adjusters,* 12cv6499 (N.D.Ill.) (Durkin, J., and Holderman, J.) (class settlement); *Jones v. Vohwinkel*, 10cv7954 (N.D.Ill.) (Manning, J.) (class settlement). See also *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130 (S.D.N.Y. 2017).

53.     The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 40 class members.

54.     The lenders can be readily identified from a list of the entities for which Midwest Fidelity Services performed debt collection services with respect to Illinois residents, as high-interest Internet lenders are distinctive, easily identified, and do not engage in other types of transactions. The license status is available on the Internet. The class members are the individuals from which Midwest Fidelity Services collected or attempted to collect such debts. This was the method used to identify class members in the cases listed above.

55.     There is a question of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of attempting to collect illegal debts.

56.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

57.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      i.    Individual actions are not economically feasible.

      ii.    Members of the class are likely to be unaware of their rights. Indeed, no one would pay a void loan except through fraud or duress.

      iii.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      (1)    Statutory damages;

(2)     Actual damages including all amounts collected by Defendant from members of the class;

(3)     Attorneys' fees, litigation expenses and costs of suit; and

(4)     Such other and further relief as the Court deems proper.

## COUNT II – DECLARATORY AND INJUNCTIVE RELIEF

58.     Plaintiff incorporates paragraphs 1-36.

59.     There is a controversy between the Plaintiff and class members, on the one hand, and Defendant, on the other, as to whether the loans Defendant is attempting to collect are legally enforceable.

60.     Declaratory relief will resolve such controversy.

61.     Injunctive relief is necessary to halt extrajudicial collection efforts.

## CLASS ALLEGATIONS

62.     Plaintiff brings this claim on behalf of a class and a subclass, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) and (b)(3).

63.     The class consists of (a) all individuals with Illinois addresses (b) from whom Midwest Fidelity Services sought to collect a loan (c) made at more than 9% interest (d) to an Illinois resident while in Illinois (e) by an entity which did not possess a bank or credit union charter and was not licensed by the Illinois Department of Financial and Professional Regulation (f) by communicating with the consumer and/or credit reporting (g) where any such activity occurred on or after a date one year prior to the filing of this action.

64.     The subclass consists of class members where the unlicensed entity was "Rapital Capital".

65.     Similar classes have been certified in a number of prior cases. *Jones v. National Credit Adjusters,* 10cv8027 (N.D.Ill.) (Gilbert, M.J.) (class settlement); *Couser v. National Credit Adjusters*, 1:12-cv-07593-JSR and 1:13-cv-02542-JSR (S.D.N.Y.) (class settlement); *Paxton v. National Credit Adjusters,* 12cv6499 (N.D.Ill.) (Durkin, J., and Holderman, J.) (class settlement); *Jones v.*

*Vohwinkel*, 10cv7954 (N.D.Ill.) (Manning, J.) (class settlement). See also *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130 (S.D.N.Y. 2017).

66.     The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 40 class members.

67.     The lenders can be readily identified from a list of the entities for which Midwest Fidelity Services performed debt collection services with respect to Illinois residents, as high-interest Internet lenders are distinctive, easily identified, and do not engage in other types of transactions.  The license status is available on the Internet. The class members are the individuals from which Midwest Fidelity Services collected or attempted to collect such debts. This was the method used to identify class members in the cases listed above.

68.     There is a question of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of attempting to collect illegal debts.

69.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

70.     Defendant has acted on a uniform basis with respect to the class members, making final injunctive relief and corresponding declaratory relief appropriate.

71.     A class action is superior  for the fair and efficient adjudication of this matter, in that:

       i.     Individual actions are not economically feasible.

      ii.     Members of the class are likely to be unaware of their rights. Indeed, no one would pay a void loan except through fraud or duress.

     iii.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

        (1)     A declaration that the loans complained of are invalid.

        (2)     An injunction against collection of such loans;

        (3)     Costs of suit; and

        (4)     Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Cassandra P. Miller
Stephen J. Pigozzi
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

-12-

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN COMBS LATTURNER**
**& GOODWIN, LLC**
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

-13-

<u>**CERTIFICATE OF SERVICE**</u>

      Daniel A. Edelman certifies that on March 24, 2024, this document was filed via ECF, causing a copy to be sent to all counsel of record.

<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman
